01129-94330 (JDB)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| **PHILLIP KEMPER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 1:25-CV-02491-STA-jay |
| **CITY OF JACKSON, TENNESSEE,** and ) | |
| **THOM CORLEY, INDIVIDUALLY** and **IN** ) | |
| **HIS OFFICIAL CAPACITY AS CHIEF OF** ) | |
| **POLICE OF JACKSON, TENNESSEE,** ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT CITY OF JACKSON, TENNESSEE'S ANSWER

### FIRST DEFENSE

Plaintiff Phillip Kemper ("Kemper") failed to state a claim upon which relief can be granted.

### SECOND DEFENSE

Defendant City of Jackson, Tennessee ("the City") responds to the specific allegations of Kemper's Complaint, paragraph by paragraph, as follows:

1. In response to the allegations of ¶ 1 of the Complaint, the City admits that Kemper has alleged claims pursuant to 42 U.S.C. §§ 1983 and 1988; however, the City denies that it violated any of the alleged provisions or that it is liable to Kemper under these statutes or any other cause of action.

2. The City admits the allegations of ¶¶ 2-7 of the Complaint.

3. In response to the allegations of ¶ 8 of the Complaint, the City admits that Kemper contacted then Assistant Chief Thom Corley and Lieutenant Gary Benton about the Jackon Police Department's ("JPD") policies for civil and criminal asset seizures. The City is without sufficient information to either admit or deny the allegations about the date and method that Kemper used to contact Corley and Benton. The City denies any remaining allegations of ¶ 8 of the Complaint.

4. The City is without sufficient information to either admit or deny the allegations of ¶¶ 9-13 of the Complaint.

5. In response to the allegations of ¶ 14 of the Complaint, the City admits that Kemper was ultimately responsible for the Jackson Madison County Metro Narcotics Unit; however, the City is without sufficient information to either admit or deny the remaining allegations of ¶ 14 of the Complaint.

6. In response to the allegations of ¶ 15 of the Complaint, the City admits that Kemper was ultimately responsible for the Jackson Madison County Metro Narcotics Unit, including the money and other items seized and that, because Kemper and Ms. Benton did not get along, then Chief Julian Wiser removed Benton from Kemper's supervision. The City denies the remaining allegations of ¶ 15 of the Complaint.

7. In response to the allegations of ¶ 16 of the Complaint, the City admits that, after Kemper reported his belief that seized money had not been deposited, Thom Corley instructed Kemper to count the money in the presence of Captain Gamble and a representative from JPD's PSIU division; Kemper verified a large sum of undeposited funds in the Metro safe in the presence of Captain Gamble and a PSIU representative; and

Kemper did not count the undeposited funds in the presence of Captain Gamble or the PSIU representative. The City denies any remaining allegations of ¶ 16 of the Complaint.

8.      In response to the allegations of ¶ 17 of the Complaint, the City admits that Captain Jackie Benton advised in the presence of Thom Corley that she did not know how much money she had in the Metro safe and that she had not made a deposit in over a year. The City denies the remaining allegations of ¶ 17 of the Complaint.

9.      In response to the allegations of ¶ 18 of the Complaint, the City admits that JPD has not made any changes to its seizure policies, but denies any inference that JPD needed to change such policies. The City denies any remaining allegations of ¶ 18 of the Complaint.

10.     The City denies the allegations of ¶ 19 of the Complaint.

11.     In response to the allegations of ¶ 20 of the Complaint, the City admits that Kemper reported alleged violations to the District Attorney General for the Twenty-Sixth Judicial District and that the Tennessee Comptroller of the Treasury investigated the records of the Jackson-Madison County Metro Narcotics Unit. The City denies the remaining allegations of ¶ 20 of the Complaint.

12.     In response to the allegations of ¶ 21 of the Complaint, the City admits that the Tennessee Comptroller of the Treasury investigated the records of the Jackson-Madison County Metro Narcotics Unit and produced a report ("the Report"). The City states that the Report speaks for itself. The City denies the remaining allegations of ¶ 21 of the Complaint.

13.     In response to the allegations of ¶ 22 of the Complaint, the City states that the Report speaks for itself. The City denies the remaining allegations of ¶ 22 of the Complaint.

14. The City denies the allegations of ¶¶ 23-24 of the Complaint.

15. The City is without sufficient information to either admit or deny the allegations of ¶ 25 of the Complaint.

16. In response to the allegations of ¶ 26 of the Complaint, the City admits that Kemper stated that he would not be intimidated by what he perceived as threats of Internal Affairs; however, the City denies any inference that JPD was threatening Kemper with Internal Affairs. The City denies the remaining allegations of ¶ 26 of the Complaint.

17. The City denies the allegations of ¶ 27 of the Complaint.

18. The City denies the allegations of ¶¶ 28-29 of the Complaint.

19. The City admits the allegations of ¶ 30 of the Complaint.

20. In response to the allegations of ¶ 31 of the Complaint, the City admits that Mayor Conger provided a written response on May 10, 2021. The City denies the remaining allegations of ¶ 31 of the Complaint.

21. The City admits the allegations of ¶ 32 of the Complaint.

22. In response to the allegations of ¶ 33 of the Complaint, the City states that the August 26, 2021 notice speaks for itself. The City denies the remaining allegations of ¶ 33 of the Complaint.

23. The City admits the allegations of ¶ 34 of the Complaint.

24. The City admits the allegations of ¶¶ 35-36 of the Complaint with the clarification that Thom Corley was the Assistant Chief of Police on December 21, 2021.

25. The City admits the allegations of ¶¶ 37-38 of the Complaint.

26. In response to the allegations of ¶ 39 of the Complaint, the City admits that Kemper completed the interviews and examinations with the City's appointed psychologist

and that the City did not provide the results to Kemper pursuant to the City's policy; however, the City is without sufficient information to either admit or deny the length of Kemper's interviews and examinations.

27. The City admits the allegations of the first grammatical sentence of ¶ 40 of the Complaint. The City is without sufficient information to either admit or deny the allegations of the second grammatical sentence of ¶ 40 of the Complaint.

28. The City admits the allegations of ¶¶ 41-43 of the Complaint.

29. In response to the allegations of ¶ 44 of the Complaint, the City denies that it terminated Kemper on January 16, 2025. The City admits that, because Kemper had taken a job at another law enforcement agency in violation of JPD policy, the City interpreted Kemper's actions as a resignation from the City. The City admits that Chief Corley sent Kemper a letter on January 16, 2025 communicating the City's interpretation of Kemper's actions. Chief Corley's letter, which Kemper attached as Exhibit 1 to the Complaint, speaks for itself. The City further admits that, as a professional courtesy, John Burleson, counsel for the City, called Plaintiff's counsel, Clyde Keenan, and informed him about the City's forthcoming letter, but the City is unsure of the exact date of that conversation. The City would state that Kemper responded, rejecting the City's interpretation of his actions and denying his resignation; therefore, the City later served Kemper with a statement of charges and held a hearing, which resulted in his termination, effective on February 18, 2025.

30. The City admits the allegations of ¶ 45 of the Complaint. The City would state that the seventeen page statement of charges speaks for itself.

31. In response to the allegations of ¶ 46 of the Complaint, the City admits that Kemper received an administrative hearing on the statement of charges and that the City terminated Kemper after the administrative hearing.

32. The City denies the allegations of ¶¶ 47-48 of the Complaint.

33. The City admits the allegations of ¶¶ 49-50 of the Complaint.

34. The City denies the allegations of ¶ 51 of the Complaint as written. The City admits that Section 84 of the City's Charter states, "No person holding any classified position of employment shall be discharge[d] from the service of the city or demoted except for just cause."

35. The City denies the allegations of ¶¶ 52-54 of the Complaint.

36. The City denies that Kemper is entitled to any of the relief sought in his prayer for relief.

37. Any specific allegation of the Complaint not previously admitted or denied is hereby generally denied, the same as if specifically denied.

### THIRD DEFENSE

Kemper's official-capacity claim against Thom Corley is really a claim against the City as Corley's employer. Because the City is a named defendant, Kemper's claim is redundant and, thus, should be dismissed.

### FOURTH DEFENSE

To the extent that Kemper asserts a due process claim based on his period of paid administrative leave, his claim is barred by the doctrines of first-to-file, res judicata, claim preclusion, and/or issue preclusion because Kemper has asserted such a due process

claim in the currently pending case, *Phillip Kemper v. City of Jackson*, 1:22-cv-02689-MSN-jay ("the First Lawsuit").

## FIFTH DEFENSE

The City did not deprive Kemper of a protected interest or fail to provide him with adequate due process for his termination because the City provided Kemper with notice of the charges against him and a hearing with an opportunity to respond to the charges before his termination.

## SIXTH DEFENSE

A due process violation does not occur based on a violation of state law or an internal policy/regulation. Therefore, the City did not violate the due process clause of the Fourteenth Amendment to the United States Constitution to the extent it failed to follow its applicable policies or any state law.

## SEVENTH DEFENSE

Tenn. Code Ann. § 38-8-304 does not apply to the City because the City has enacted its own civil service process in its Charter.

## EIGHTH DEFENSE

To the extent that Kemper asserts a whistleblower claim based on his period of paid administrative leave or facts considered in the First Lawsuit, his claim is barred because Kemper asserted a whistleblower claim and the Court dismissed Kemper's whistleblower claim in the First Lawsuit. (*See* ECF 74 at Page ID 699 in First Lawsuit.) Thus, the doctrines of first-to-file, res judicata, claim preclusion, and/or issue preclusion bars any such whistleblower claim.

01129-94330 (JDB)

## NINTH DEFENSE

Kemper does not have a claim under the Tennessee Public Protection Act because the City did not discharge or terminate Kemper solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

## TENTH DEFENSE

The City terminated Kemper because of legitimate, nondiscriminatory, and non-retaliatory reasons as outlined in the statement of charges (ECF 1-5).

## ELEVENTH DEFENSE

As a governmental entity, the City is immune from punitive damages; thus, to the extent he seeks punitive damages from the City, Kemper's claim is barred.

## TWELETH DEFENSE

Kemper's claims under 42 U.S.C. § 1983 based on *respondeat superior* fail as a matter of law.

## THIRTEENTH DEFENSE

To the extent Kemper has failed to mitigate his alleged damages, such failure reduces or bars Kemper's recovery for such damages.

## FOURTEENTH DEFENSE

The City relies upon all defenses available to it under the statutes cited by Kemper in his Complaint.

01129-94330 (JDB)

        Respectfully submitted,

        RAINEY, KIZER, REVIERE & BELL, P.L.C.

        By:   s/Geoffrey A. Lindley
             JOHN D. BURLESON, BPR NO. 010400
             GEOFFREY A. LINDLEY, BPR NO. 021574
             MATTHEW R. COURTNER, BPR NO. 029113
             *Attorney for Defendants City of Jackson*
             209 East Main Street
             P. O. Box 1147
             Jackson, TN 38302-1147
             (731) 423-2414
             jburleson@raineykizer.com
             glindley@raineykizer.com
             mcourtner@raineykizer.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 6th day of June, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing report, including the parties below. All other parties will be served by facsimile, e-mail, or regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

    Clyde W. Keenan
    Keenan Law & Consulting
    6465 N. Quail Hollow, #200
    Memphis, Tennessee 38120
    *Attorney for Plaintiff*


                          s/Geoffrey A. Lindley